**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy Brown,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-17-03323-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Kathy Brown's Application for Supplemental Security Income Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 8, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 9, "Def.'s Br."), and Plaintiff's Reply (Doc. 10, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 7, R.) and now affirms the Administrative Law Judge's decision (R. at 18–38) as upheld by the Appeals Council (R. at 2–7).

**I.    BACKGROUND**

Plaintiff filed an application for Supplemental Security Income Benefits on April 3, 2014 for a period of disability beginning May 17, 2013. (R. at 21.) Plaintiff's claim was denied initially on September 30, 2014 (R. at 21), and on reconsideration on January 30, 2015 (R. at 21). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on August 9, 2016. (R. at 18–38.) On November 22, 2016, the ALJ denied

Plaintiff's Application. (R. at 32.) On August 25, 2017, the Appeals Council denied a request for review of the ALJ's decision. (R. at 2–7.) On September 26, 2017, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: cervical radiculopathy and spondylosis; status post C4-7 fusion; lumbar degenerative disc disease and radiculopathy; and carpal tunnel syndrome. (R. at 23.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404." (R. at 25.) The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. 404.1567(b) except [Plaintiff] can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, sit for 6 hours of an 8-hour workday, and stand/walk for 6 hours of an 8-hour workday." (R. at 25.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred by giving little weight to the opinion of Plaintiff's treating physician; (2) the ALJ erred by partially discrediting Plaintiff's symptom testimony; and (3) the Court should remand for computation of benefits. (Pl.'s Br. at 1.)

### A. The ALJ Did Not Err by Partially Discrediting the Opinions of Plaintiff's Treating Physician

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the ALJ assigned little weight to the opinion of Plaintiff's treating neurologist, Dr. Atul Syal. (R. at 30–31.) Dr. Syal's opinion was contradicted by two nonexamining desktop agency reviewers, as well as by Dr. Briggs, a consultative examiner. (R. at 29–30.) Dr. Syal submitted a narrative that opined Plaintiff could not sit or stand for any length of time, her chronic pain made it difficult for Plaintiff to focus, and that she was unable to work. (R. at 1295–97.) Desktop reviewers, on the other hand, concluded that Plaintiff "can perform a range of light exertion with various postural, manipulative, and environmental restrictions." (R. at 29.) Dr. Briggs noted that Plaintiff exhibited normal gait, had normal strength in her upper and lower extremities, and had normal range of motion in the major joints. (R. at 29.) Dr. Briggs examined Plaintiff but did not review any medical evidence, so the ALJ only afforded his opinion partial weight. (R. at 29.)

Because Dr. Syal's opinion was contradicted by several nontreating physicians, the ALJ needed only to provide specific and legitimate reasons supported by substantial evidence to discredit it. *Murray*, 722 F.2d at 502. The Court finds that the ALJ did so. At the outset, the Court notes that the nontreating physicians did not have access to evidence of Plaintiff's later spinal condition—a C6 to C7 "non-union," which first appeared in Plaintiff's records in April of 2015. (Pl.'s Br. at 14.) But the opinions of the nontreating physicians alone cannot constitute specific and legitimate reasons to discredit Dr. Syal's opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) ("[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."). Thus, the Court upholds the ALJ's decision not based solely on the opinions of the nontreating physicians who were unable to review a piece of Plaintiff's medical history, but instead on the other evidence that the ALJ cited as specific and legitimate reasons.

First, the ALJ found that Dr. Syal's opinion was inconsistent with Plaintiff's daily activities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). Dr. Syal reported that Plaintiff could not sit for any period of time, yet Plaintiff traveled to Indiana once and Mexico twice, which would require sitting for a prolonged period of time on an airplane or in a vehicle. (R. at 30.) Further, the ALJ noted that Plaintiff acted as her boyfriend's caretaker when he underwent chemotherapy, and she reported generally being able to "care for her own personal hygiene/grooming needs, prepare simple meals, do laundry, wash dishes, drive short distances, go out alone, shop outside the home, pay bills, count change . . . spend time with others, and follow instructions." (R. at 29.) It was not error for the ALJ to find that these daily activities do not align with the total incapacitation portrayed in Dr. Syal's report.[1]

---

[1] The Court refrains from considering Plaintiff's exercise habits in her daily activities, as Plaintiff alleges that all the Zumba classes noted in her medical records took place before the onset of her disability. Plaintiff does not argue against the mention of

- 5 -

The ALJ provided another specific and legitimate reason to discredit Dr. Syal's opinion by noting that it is inconsistent with Dr. Syal's own treatment records. (R. at 30.) Dr. Syal's records indicate that Plaintiff "denied back or joint pain, cramps, muscle weakness, stiffness, or leg pain with exertion" during a 2015 appointment. (R. at 30; 862.) The absence of these complaints discredits Dr. Syal's determination that Plaintiff cannot sit or stand for any period of time. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that the discrepancy between a treating physician's testimony and his prior recorded observations of a claimant constitutes "a clear and convincing reason for not relying on the doctor's opinion"); *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (finding the ALJ had clear and convincing reasons to reject doctor's testimony where his "opinion is clearly inconsistent with the medical notes that he had made during examinations" of the claimant).

Finally, the ALJ identified as a reason to discredit Dr. Syal's testimony that he "relied quite heavily upon the subjective statements of the claimant, rather than the objective and clinical evidence." (R. at 30.) Where "the ALJ finds the [claimant] not credible, the ALJ may discount the treating provider's opinion" if it is based on the claimant's self-reporting. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). As the Court discusses below, the ALJ found Plaintiff's symptom testimony not credible. Accordingly, the ALJ properly discredited Dr. Syal's opinion to the extent that it was based on Plaintiff's self-reporting.

Having provided several specific and legitimate reasons grounded in substantial evidence for her decision to do so, the ALJ did not err by discrediting Dr. Syal's opinion.

**B.     The ALJ Did Not Err by Discrediting Plaintiff's Symptom Testimony**

Plaintiff also argues that the ALJ erred by rejecting her symptom testimony. (Pl.'s Br. at 14–16.) While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms."

---

Plaintiff's weight lifting, but the Court disregards it for the same reason. (R. at 830; Reply at 4.)

*Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal citations omitted).

The Court finds that the ALJ did not err in discrediting Plaintiff's symptom testimony. The ALJ afforded little weight to Plaintiff's testimony for many of the same reasons she discredited Dr. Syal's opinion. First, the ALJ found that Plaintiff's testimony was inconsistent with her daily activities, as explained above. (R. at 29.) Second, the ALJ noted that medical records and treatment notes from various physicians do not reflect limitations as severe as those that Plaintiff described. (R. at 28.) For example, "[d]espite [Plaintiff's] allegations of debilitating symptoms, a treating provider recommended she walk or exercise for at least 30 minutes 3-4 times per week." (R. at 28.) And "[i]n stark contrast with [Plaintiff's] allegations . . . she denied fatigue, weakness, malaise, back and joint pain, and stiffness." (R. at 28.) The ALJ also noted that one of Plaintiff's treating physicians recommended no surgical treatment for Plaintiff's cervical ailments. (R. at 28.) While Plaintiff responds that the recommendation was based on her doctor's concern about the surgery's potential side effects, the ALJ found that was not substantiated in Plaintiff's medical records. (R. at 28.) Finally, the ALJ cited evidence that Plaintiff's conditions have improved with moderate treatment such as physical therapy and pain medication. (R. at 27–28.)

In short, the ALJ provided a list of specific and legitimate reasons to discredit Plaintiff's symptom testimony. The Court finds it was not error for her to do so.

## IV. CONCLUSION

Because the Court finds that the ALJ did not err in discrediting Dr. Syal's opinion or Plaintiff's testimony, it need not consider whether this matter should be remanded for further consideration or for computation of benefits. Based on the reasons explained above, the Court affirms the denial of Plaintiff's benefits.

**IT IS THEREFORE ORDERED** affirming the November 22, 2016 decision of the Administrative Law Judge, (R. at 18–38), as upheld by the Appeals Council on August 25, 2017 (R. at 2–7).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 22nd day of March, 2019.

Honorable John J. Tuchi
United States District Judge